**Affirmed and Memorandum Opinion filed August 9, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-21-00170-CV

---

### RUBEN O. JIMENEZ, Appellant

### V.

### VALERIE ANN VILLANUEVA, Appellee

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-70798**

---

## M E M O R A N D U M   O P I N I O N

Appellee Valerie Ann Villanueva filed an application for a protective order against appellant Ruben O. Jimenez. After holding a hearing on the application, the trial court signed a protective order prohibiting Jimenez from contacting Villanueva.

Jimenez appeals the protective order and argues that (1) the trial court deprived him of his due process rights during the hearing on Villanueva's application, and (2) the evidence was legally and factually insufficient to support

the trial court's findings.  For the reasons below, we affirm.

## BACKGROUND

Villanueva filed an application for a protective order in November 2020.  In the application, Villanueva stated that she and Jimenez previously were involved in a dating relationship and that, after their relationship ended, Jimenez engaged in a pattern of harassing and threatening behavior.  Specifically, Villanueva stated that Jimenez continued to call her and send her text messages and, on several occasions, arrived at her home unannounced.  On one of these occasions, Villanueva said Jimenez threatened her with a gun.

The trial court held a hearing on Villanueva's application in December 2020.  Villanueva testified at the hearing and offered evidence to support her contentions, including text messages and a surveillance video from her Michigan residence.  Jimenez was not represented by counsel at the hearing but offered a statement refuting Villanueva's allegations.

On December 29, 2020, the trial court signed a protective order prohibiting Jimenez from communicating with or engaging in conduct directed towards Villanueva.  The order states that it is effective for the duration of Jimenez's life.  The trial court signed findings of fact and conclusions of law approximately one month later.

Jimenez filed a motion for new trial through counsel raising his due-process and evidentiary-sufficiency challenges.  The trial court signed an order denying Jimenez's motion for new trial.  Jimenez filed a notice of appeal.

## ANALYSIS

In two issues, Jimenez contends that (1) he was deprived of his due process rights during the hearing on Villanueva's application for a protective order, and

2

(2) the evidence is legally and factually insufficient to support the findings required to warrant a protective order. We begin with Jimenez's second issue because, if successful, it would provide Jimenez with the greatest relief. *See GB Tubulars, Inc. v. Union Gas Operating Co.*, 527 S.W.3d 563, 567 (Tex. App.— Houston [14th Dist.] 2017, pet. denied).

## I. Sufficiency of the Evidence

### A. Standard of Review and Governing Law

When reviewing a trial court's findings for legal and factual sufficiency, we apply the same standards that we apply in reviewing jury findings. *See Teel v. Shifflett*, 309 S.W.3d 597, 603 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). To examine the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not do so. *Id*. at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *Id*. The trial court, as the factfinder, is the only judge of witness credibility and the weight to give to testimony. *Id*. at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering the evidence in favor of and contrary to the challenged finding. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). After considering the entire record, we set aside the judgment only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is clearly wrong and unjust. *Teel*, 309 S.W.3d at 603. "We will not substitute our judgment for that of the trial court merely because we might

3

reach a different conclusion." *Coffman v. Melton*, 448 S.W.3d 68, 71 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Before a trial court may issue a protective order, it must make findings that family violence (1) has occurred, and (2) is likely to occur again in the future. Tex. Fam. Code Ann. § 85.001(b); *see also Coffman*, 448 S.W.3d at 72. The Texas Family Code defines "family violence" as:

> [A]n act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself[.]

Tex. Fam. Code Ann. § 71.004(1). "Family violence" also includes "dating violence," which is defined as an act, other than a defensive measure, that:

> (1)    is committed against a victim or applicant for a protective order:
>
>     (A)    with whom the actor has or has had a dating relationship; . . . [and]
>
> (2)    is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim or applicant in fear of imminent physical harm, bodily injury, assault, or sexual assault.

*Id*. §§ 71.004(3), 71.0021(a). Given the remedial nature of the Family Code's protective order provisions, courts broadly construe them to effectuate the Code's preventative purposes. *Rodriguez v. Doe*, 614 S.W.3d 380, 385 (Tex. App.—Houston [14th Dist.] 2020, no pet.). In cases involving protective orders against family violence, evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue this behavior in the future. *Coffman*, 448 S.W.3d at 72.

4

Generally, the duration of a protective order may not exceed two years. *See* Tex. Fam. Code Ann. § 85.025(a). However, the trial court may issue a protective order for a longer period of time if the court finds that the respondent "committed an act constituting a felony offense involving family violence against the applicant . . . , regardless of whether the person has been charged with or convicted of the offense." *Id.* § 85.025(a-1)(1). If the trial court renders a protective order for a period of more than two years, it must include in its order a finding described by section 85.025(a-1). *Id.* § 85.001(d); *Jovel v. Blanco*, No. 14-20-00638-CV, 2022 WL 220251, at *4 (Tex. App.—Houston [14th Dist.] Jan. 25, 2022, no pet.) (mem. op.).

## B.    Evidence and the Trial Court's Findings

Testifying at the hearing, Villanueva said she and Jimenez were in an "off and on" dating relationship for over eight years. According to Villanueva, Jimenez "assault[ed] or threaten[ed]" her while they were together. Admitted into evidence during this portion of Villanueva's testimony was the statement she included with her protective order application. Elaborating on the incidents that occurred during their relationship, Villanueva's statement says Jimenez previously had "pushed, pulled, shoved, scratched, kicked, stomped and hit [her] with his hand. He pulled [her] hair. He threw and hit [her] with objects. He forced and tried to force [her] to have sex with him."

Villanueva's statement also details a pattern of harassment and threats that began after the end of her relationship with Jimenez, including:

- Jimenez making "harassing phone calls and [sending] messages from different phone numbers." According to Villanueva, Jimenez "created different phone numbers" to contact her since she had blocked his original phone number.
- Jimenez sending "several harassing messages to [Villanueva's]

5

boyfriend from the same phone numbers."

- Jimenez arriving at Villanueva's home unannounced several times. On at least one of these occasions, Villanueva stated that Jimenez "demanded [she] meet with him" and threatened to knock on her door while her children were asleep. Villanueva said that when she stepped out of her house to meet Jimenez, he "pulled out his gun and pressed it against [her] ribcage" and she "feared that he was going to shoot and kill" her.

- Jimenez stalking Villanueva and repeatedly parking in front of her home.

Summing up Jimenez's conduct after the end of their relationship, Villanueva's statement concludes that:

> [Jimenez] refuses to believe that the relationship is over. His behavior towards me has been escalating since I ended the relationship with him. He is unstable and unpredictable. He has threatened to kill me. I believe that he is capable of carrying out his threats. He stalks and spies on me. He is jealous and controlling. He owns a gun. He has made me afraid for my safety and well-being. I believe that the violence will continue if a protective order is not granted.

Also admitted into evidence were approximately 30 pages of text messages; according to Villanueva, these were messages she had received from Jimenez or phone numbers she believed Jimenez was using. Most of the messages are from Jimenez to Villanueva and range from him berating her for not answering his phone calls, to telling her that he misses her, to making vulgar sexual comments. Jimenez also sent Villanueva pictures of them together and pictures of clothing, including underwear. In her responses to Jimenez, Villanueva told him to stop contacting her.

In her testimony, Villanueva stated that she works as a flight attendant and maintains residences in Texas and Michigan. Villanueva said her neighbors and roommates have told her Jimenez was going to these residences to look for her.

6

Admitted into evidence was a surveillance video taken on October 17, 2020, by one of Villanueva's Michigan neighbors. The video shows a gray vehicle pull up and park in the street in front of Villanueva's home. A man sits in the vehicle for a few minutes before walking up to the front of Villanueva's home. Shortly thereafter, the man runs back to his vehicle and reverses away from Villanueva's house.

Villanueva stated that she believes the person in the video was Jimenez and that he reversed out of the neighborhood "[i]n an attempt to avoid the surveillance" cameras. Villanueva said she had not told Jimenez her Michigan address and, on the day this incident was recorded, a vulgar sexual note was left on the door of her home. Villanueva said she recognized the note's handwriting as belonging to Jimenez. Villanueva also believed that the car in the video belonged to Jimenez. Villanueva said she was "alarm[ed]" that Jimenez "traveled 16 hours or more to leave a note on [her] door" and testified that there were other incidents in which he has arrived at her home unannounced.

In his statement to the trial court, Jimenez denied Villanueva's accusations and said, "she's the one that has been driving by my house." Jimenez also denied sending many of the text messages to Villanueva. Jimenez denied that he was the person in the surveillance video.

In its protective order signed December 29, 2020, the trial court found that family violence (1) had occurred, and (2) was likely occur in the future. The trial court's order also states:

> The Court finds there are reasonable grounds to believe [Villanueva] is a victim of STALKING by [Jimenez]. The Court finds [Jimenez] has committed an act constituting a FELONY offense involving family violence to [Villanueva].

The trial court's protective order prohibits Jimenez from contacting Villanueva for

Jimenez's lifetime.

In its findings of fact and conclusions of law, the trial court reiterates its findings on family violence. With respect to the felony offense, the trial court's findings and conclusions state:

5. The Court finds that [Jimenez] has committed an act constituting a FELONY offense involving family violence to [Villanueva].

6. The Court finds that there are reasonable grounds to believe that [Villanueva] is the victim of Stalking and [Jimenez] has engaged in conduct towards [Villanueva] as described in Texas Penal Code Section 42.072 (Stalking), 42.07 (Harassment), and Chapter 7A of the Texas Code of Criminal Procedure.

### C. Analysis

On appeal, Jimenez challenges whether legally and factually sufficient evidence supports the trial court's family violence findings as well as its finding regarding the predicate felony offense necessary to grant a protective order lasting longer than two years. We conclude these findings are supported by sufficient evidence.

### 1. Family Violence

As outlined above, "family violence" includes (1) acts "intended to result in physical harm, bodily injury, assault, or sexual assault," and (2) threats that "reasonably place the [applicant] in fear of imminent physical harm, bodily injury, assault, or sexual assault." *See* Tex. Fam. Code Ann. §§ 71.004, 71.0021(a).

With respect to the trial court's finding that family violence had occurred, Villanueva's statement asserted that, while she and Jimenez were in a relationship, Jimenez pushed her, hit her, kicked her, threw objects at her, and forced her to have sex with him. This evidence is legally sufficient to support the challenged finding. *See City of Keller*, 168 S.W.3d at 823, 827; *see also, e.g.*, *Williams v.*

8

*Bowles*, No. 01-13-00017-CV, 2014 WL 586236, at *3 (Tex. App.—Houston [1st Dist.] Feb. 13, 2014, no pet.) (mem. op.) (victim's testimony sufficient to support finding that family violence had occurred). Villanueva's statement on this point also constitutes factually sufficient evidence, particularly since no evidence was offered to refute her assertions. *See In re A.C.*, 560 S.W.3d at 631; *Teel*, 309 S.W.3d at 603.

With respect to the trial court's finding that family violence is likely to occur in the future, Villanueva testified and offered evidence showing that, after their relationship ended, Jimenez (1) continued to contact her with repeated phone calls and text messages, despite Villanueva telling him not to contact her; (2) arrived unannounced at her homes several times; (3) left a vulgar sexual message on the door of her Michigan home; and (4) threatened Villanueva with a gun. The surveillance video taken by one of Villanueva's neighbors also shows a vehicle parking in front of Villanueva's home, a man walking up to the front door and shortly thereafter running back to the car, and the vehicle reversing out of the neighborhood. Villanueva testified that she believes this person was Jimenez and that, when he walked up to her house, he left a vulgar sexual note on her door. This evidence, considered in the light most favorable to the challenged finding, is legally sufficient to support the trial court's conclusion that family violence is likely to occur in the future. *See City of Keller*, 168 S.W.3d at 823, 827.

Jimenez refuted these statements at the hearing and denied sending the text messages to Villanueva and leaving a note at her Michigan residence. But the trial court, as the factfinder, was the only judge of the witnesses' credibility and the weight to assign their testimony. *See id.* at 819. We will not revisit its resolution of this conflicting evidence on appeal. *See Coffman*, 448 S.W.3d at 71. In light of the record as a whole, the trial court's finding that family violence is likely to

9

occur in the future is not against the great weight and preponderance of the evidence. *Teel*, 309 S.W.3d at 603.

### 2. Felony Offense

In its protective order, the trial court found that there were "reasonable grounds to believe [Villanueva] is a victim of STALKING by [Jimenez]" and that Jimenez "has committed an act constituting a FELONY offense involving family violence to [Villanueva]." These findings were reiterated in the trial court's findings of fact and conclusions of law.

In relevant part, a person commits the offense of stalking if:

[T]he person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1)   constitutes an offense under Section 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:

    (A)   bodily injury or death for the other person; . . . [or]

$$* \qquad * \qquad *$$

    (C)   that an offense will be committed against the other person's property;

(2)   causes the other person . . . to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3)   would cause a reasonable person to:

    (A)   fear bodily injury or death for himself or herself; . . .

$$* \qquad * \qquad *$$

    (C)   fear that an offense will be committed against the person's property; or

    (D)   feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code Ann. § 42.072(a). Section 42.07 refers to the offense of harassment. *See id*. § 42.07. Under this section, a person commits the offense of harassment if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," the person engages in the following:

(1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;

(2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person;

\* \* \*

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another; [or]

\* \* \*

(7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]

*Id*. § 42.07(a). Stalking is a third-degree felony. *Id*. § 42.072(b).

Here, legally and factually sufficient evidence support the trial court's finding that Jimenez committed the felony offense of stalking. *See id*. §§ 42.07, 42.072.

As detailed above, the evidence at the hearing showed that, after his relationship with Villanueva ended, Jimenez continued to repeatedly call and send text messages to Villanueva despite her asking him to stop contacting her. *See id*. § 42.07(a)(4), (7). Jimenez's text messages range from him berating Villanueva for not answering his phone calls, to telling Villanueva that he misses her, to making vulgar sexual comments. Based on this evidence, the trial court could conclude that this course of continued conduct was "reasonably likely to harass,

11

annoy, alarm, abuse, torment, embarrass, or offend" Villanueva. *See id.* §§ 42.07(a)(4), (7), 42.072(a)(2), (a)(3)(D).

Villanueva also testified that Jimenez would park in front of her residences unannounced. On one of these occasions, Villanueva said Jimenez threatened her with a gun. On another incident recorded on a neighbor's surveillance camera, Villanueva said Jimenez parked in front of her Michigan home and left a sexual message on her front door. This evidence also supports the conclusion that Jimenez engaged in a course of conduct "reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend" Villanueva. *See id.* §§ 42.07(a)(1), (2), 42.072(a).

The only evidence offered to refute these allegations was Jimenez's testimony at the hearing denying that he repeatedly texted Villanueva or left a note at her Michigan home. The resolution of this evidentiary conflict was within the factfinder's province and we decline to revisit that determination on appeal. *See City of Keller*, 168 S.W.3d at 819. Based on our review of the record, the trial court's finding that Jimenez engaged in the felony offense of stalking is supported by legally and factually sufficient evidence.

We overrule Jimenez's second issue.

## II.    Due Process

Citing the Texas Constitution, Jimenez argues in his first issue that the trial court deprived him of his due process rights and the ability to participate in a fair trial. Specifically, Jimenez contends he "had no opportunity to cross examine witnesses, provide his own testimony, exclude hearsay and other questionable evidence presented by Villanueva or offer his own evidence that he wished the trial court to consider without being interrupted and shut down by the trial court."

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." Tex. Const. art. 1, § 19. The Texas Constitution thus guarantees to litigants the right to be heard at a meaningful time and in a meaningful manner. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995); *Reynoso v. Dibs US, Inc.*, 541 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The opportunity to be heard and present evidence generally must amount to more than a cursory opportunity to cross-examine the other party's witnesses. *Ford v. Harbour*, No. 14-07-00832-CV, 2009 WL 679672, at *5 (Tex. App.—Houston [14th Dist.] Mar. 17, 2009, no pet.) (mem. op.).

These rights are not unlimited, however, and the trial court has discretion to maintain control in the courtroom, to expedite the trial, and to prevent what it considers a waste of time. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240-41 (Tex. 2001) (per curiam). Moreover, the trial court should "exercise reasonable control over the mode and order of examining witnesses and presenting evidence" so as to make those procedures effective for determining the truth, to avoid wasting time, and to protect witnesses from harassment or undue embarrassment. Tex. R. Evid. 611(a). Accordingly, we measure what process is due to a litigant under a "flexible standard" that depends on "the practical requirements of the circumstances." *Mosley v. Tex. Health & Human Servs. Comm'n*, 593 S.W.3d 250, 265 (Tex. 2019).

Moreover, even though Jimenez represented himself *pro se* at the hearing on Villanueva's application, *pro se* litigants are held to the same standards as a licensed attorney and must comply with all applicable laws and rules of procedure. *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 930 (Tex. App.—Houston

13

[14th Dist.] 2008, no pet.). To do otherwise would give *pro se* litigants an unfair advantage over those litigants represented by an attorney. *Id*.

Here, the record does not support the conclusion that the trial court deprived Jimenez of his due process rights during the hearing on Villanueva's application for a protective order.

First, Jimenez complains that the trial court "summarily denied" his objections to the exhibits offered by Villanueva.

When Villanueva offered her statement into evidence, Jimenez objected and said, "[t]hat's a false statement." The trial court informed Jimenez that his statement was not a "legal objection." When Villanueva next offered into evidence the surveillance video and the text messages from Jimenez, the trial court asked Jimenez if he had "a legal objection" to the exhibits. For both exhibits, Jimenez said he did not know how to object because he did "not know the legal terms." Instead of showing a deprivation of due process or due course of law, these exchanges show that the trial court notified Jimenez that his objection was deficient and affirmatively provided him with the opportunity to object to evidence before it was admitted. As a result, these exchanges do not evidence a deprivation of Jimenez's rights to due process or due course of law.

Second, Jimenez contends the trial court "basically cut off all of [his] attempts to defend himself and cross-examine" Villanueva. Specifically, while Jimenez cross-examined Villanueva, the trial court prohibited Jimenez from (1) asking Villanueva to produce additional evidence, (2) providing a handwriting demonstration, and (3) asking Villanueva to "remove [his] name so it shows a number" in the referenced text messages. In each instance, the trial court informed Jimenez that his questions were improper attempts at cross-examination. The Rules of Evidence expressly provide a mechanism through which parties may

14

preserve a claim that the trial court erroneously excluded evidence, but Jimenez failed to utilize it.  *See* Tex. R. Evid. 103(a)(2) (offer of proof).  Therefore, the propriety of the trial court's ruling has not been preserved for review.  *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  This unpreserved issue cannot constitute adequate grounds to argue Jimenez was deprived of due process or due course of law.

Third, Jimenez argues that the trial court "cut him off" while he was giving his statement about the allegations at issue.  However, the trial court only "cut off" Jimenez's statement after he began discussing the "one time" he went to Michigan in 2016 to watch a game with his family.  By limiting this line of testimony (which was immaterial to the issues before the trial court), the trial court was exercising a reasonable limitation on the proceedings.  *See* Tex. R. Evid. 611(a).  Further, there was no offer of proof which adequately preserved this issue for appeal.  Tex. R. Evid. 103(a)(2); *PNS Stores, Inc.*, 484 S.W.3d at 511.

Finally, Jimenez asserts that the trial court prevented him from offering exhibits into evidence.  When Jimenez referenced these exhibits (specifically, more text messages and a separate surveillance video), the trial court asked Jimenez if he had submitted those exhibits into evidence in accordance with the court's rules.  Jimenez said he did not.  Again, Jimenez failed to utilize the procedure set forth in the Texas Rules of Evidence to preserve this issue for appellate review.  *See* Tex. R. Evid. 103(a)(2); *PNS Stores, Inc.*, 484 S.W.3d at 511.  This unpreserved issue cannot constitute adequate grounds to argue Jimenez was deprived of due process or due course of law.

In sum, we conclude that Jimenez has not met his burden on appeal to show that he was denied the right to be heard concerning Villanueva's contentions at a

15

meaningful time and in a meaningful manner.  We therefore overrule Jimenez's first issue.

## CONCLUSION

We affirm the trial court's December 29, 2020 protective order.


/s/    Meagan Hassan
        Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.

16