**Affirmed as Modified and Opinion filed September 29, 2016.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-15-00695-CV**

---

**GARDEN RIDGE, L.P., Appellant/Cross-Appellee**

**V.**

**CLEAR LAKE CENTER, L.P., Appellee/Cross-Appellant**

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2009-58038**

---

## O P I N I O N

Garden Ridge, L.P. is a commercial tenant of Clear Lake Center, L.P. Garden Ridge sued Clear Lake Center for breach of the lease, claiming that Clear Lake Center overcharged common area maintenance (CAM) costs by including a fee paid to a third party for managing the entire property rather than just the common area. In a prior appeal, we reversed summary judgment for Garden Ridge because Garden Ridge failed to conclusively prove that its damages amounted to the entire management fee Clear Lake Center had charged. *See Clear Lake Center,*

*L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 540 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

On remand, the case was tried to a jury. The jury found that (1) Clear Lake Center failed to prove its affirmative defenses, (2) Garden Ridge was entitled to damages and attorney's fees for Clear Lake Center's breach of the lease, (3) Clear Lake Center was entitled to some damages for money had and received, and (4) Clear Lake Center incurred no reasonable and necessary attorney's fees. The trial court signed a judgment consistent with the jury's verdict for Garden Ridge to recover $594,700 in damages, $350,000 for trial attorney's fees, and appellate attorney's fees. The court awarded Garden Ridge five percent postjudgment interest and no prejudgment interest.[1]

Both parties appealed. Clear Lake Center contends in its appeal that (1) Clear Lake Center conclusively established its affirmative defenses, (2) the trial court erred by excluding evidence regarding Clear Lake Center's affirmative defenses under the parol evidence rule, (3) the jury's findings of liability and damages are unsustainable based on the trial court's error in the second issue, (4) Garden Ridge was not entitled to recover attorney's fees, (5) the trial court erred by including damages in the judgment that were barred by the statute of limitations, and (6) Clear Lake Center was entitled to attorney's fees as a matter of law, and the jury's finding of $0 for Clear Lake Center's attorney's fees is unsustainable. Garden Ridge contends in its appeal that the trial court erred by (1) failing to award postjudgment and prejudgment interest at a contractual rate of eighteen percent, or

---

[1] The trial court also granted declaratory relief stating that Clear Lake Center is allowed to charge a management fee limited to the sums expended for the management and maintenance of the common area and not the property as a whole. The court declared that a comparable fee, as determined by the jury, is three percent of the common area expenses.

alternatively, (2) failing to award prejudgment interest at the statutory rate of five percent.

We sustain Clear Lake Center's fifth issue and Garden Ridge's second issue. Thus, we modify the trial court's judgment as to the amount of damages and prejudgment interest, and we affirm the judgment as modified.

## I.     CLEAR LAKE CENTER'S AFFIRMATIVE DEFENSES

The jury answered "no" to Question 2, which asked whether Clear Lake Center's failure to comply with the lease was excused by four affirmative defenses. The jury answered "no" to Question 3, which asked whether Garden Ridge was estopped from complaining of Clear Lake Center's failure to comply.

In its first issue, Clear Lake Center contends it "conclusively established Garden Ridge's claims are precluded based on affirmative defenses of waiver, ratification, novation, accord and satisfaction, and/or estoppel." Clear Lake Center argues that the "conclusively established facts and applicable law" show that "Garden Ridge was estopped to challenge how Clear Lake Center determined the management fees." Clear Lake Center asks this court to render judgment in its favor.

Garden Ridge contends that Clear Lake Center failed to preserve error. Clear Lake Center responds that it preserved error by moving for a directed verdict at the close of Garden Ridge's case. We agree with Garden Ridge.

When a party attacks an adverse finding on an issue for which the party has the burden of proof, the party must demonstrate on appeal that the evidence establishes as a matter of law all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The party must prove that the

3

evidence conclusively establishes the proposition contrary to the jury's finding. *Id.* This is a legal sufficiency complaint. *See id.*

In a case tried to a jury, a legal sufficiency complaint must be preserved in the trial court. *Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 748 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The complaint may be preserved in one of five ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Id.* at 748–49.

Clear Lake Center contends it preserved error by moving for a directed verdict at the close of Garden Ridge's evidence when Clear Lake Center said that Garden Ridge should be "as a matter of law, estopped."[2] Even assuming that Clear Lake Center's argument at the close of Garden Ridge's case could be construed as a motion for directed verdict based on estoppel, this motion was not adequate to preserve error about the jury's findings on Clear Lake Center's affirmative defenses because Clear Lake Center proceeded to offer evidence after the trial court denied the motion. *See Meek v. Onstad*, 430 S.W.3d 601, 610 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A motion for directed verdict at the close of the plaintiff's case-in-chief is insufficient to preserve a complaint of legal insufficiency of the evidence if a defendant offers evidence after denial of this motion."); *Liberty Mut. Ins. Co. v. Heitkamp*, No. 14-12-00873-CV, 2014 WL 261010, at *1–2 & n.3 (Tex. App.—Houston [14th Dist.] Jan. 23, 2014, pet. denied) (mem. op.) (defendants waived the affirmative defense of statute of limitations because they did not re-urge their motion for directed verdict at the

---

[2] At the close of Garden Ridge's evidence, Clear Lake Center mentioned estoppel but did not mention any of its other affirmative defenses.

close of the evidence, and the defendants did not assert that the affirmative defense was conclusively established in a motion for judgment notwithstanding the verdict, an objection to the jury charge, a motion to disregard a jury finding, or a motion for new trial).

We have reviewed the remainder of the record. Clear Lake Center did not preserve error by any other method. Clear Lake Center did not object to Questions 2 or 3. Nor did any of Clear Lake Center's post-trial motions or other filings address any of these defenses. "The core principle underlying error-preservation requirements is that the trial court should be given the opportunity to correct potential errors before the case proceeds on appeal." *Heitkamp*, 2014 WL 261010, at *1. Clear Lake Center did not provide the trial court with an opportunity to render judgment for Clear Lake Center on its affirmative defenses. Accordingly, Clear Lake Center has not preserved error for its appellate complaint that it conclusively established its affirmative defenses.

Clear Lake Center's first issue is overruled.

## II.    EXCLUSION OF EVIDENCE

In its second and third issues, Clear Lake Center contends the trial court reversibly erred by excluding evidence in support of Clear Lake Center's affirmative defenses under the parol evidence rule. As a part of its allegation of evidentiary error, Clear Lake Center must establish harm: that any error probably caused the rendition of an improper judgment or prevented Clear Lake Center from properly presenting the case to this court. *See* Tex. R. App. P. 44.1(a). In connection with our analysis of such harm, we first review the admitted evidence and jury questions related to Clear Lake Center's defenses. Then, we review what evidence was excluded. Ultimately, assuming without deciding that the trial court erred, we hold that Clear Lake Center has not shown harm.

5

## A.     Clear Lake Center's Affirmative Defenses

Garden Ridge signed the lease with Fiesta Mart as its landlord in 1995. Clear Lake Center purchased the shopping center from Fiesta Mart in 2003 and became Garden Ridge's landlord.  Garden Ridge filed for bankruptcy in 2004. During the bankruptcy, Clear Lake Center sent Garden Ridge a reconciliation for the 2003 CAM costs.  This reconciliation statement was the first one to include a management fee for managing the common area.  The management fee was about $58,000.

Clear Lake Center's defensive theory at trial was based on an amendment to the lease that Garden Ridge signed while it was in bankruptcy in 2005.  At the time of the amendment, Garden Ridge had owed Clear Lake Center rent and other expenses, including CAM costs.  Garden Ridge had the option to reject or assume the lease during bankruptcy, and Garden Ridge desired to assume it.  Similarly, Clear Lake Center wanted to keep Garden Ridge as a tenant.

Edwin Freedman was one of the owners of Clear Lake Center and was the president of United Equities, the company that Clear Lake Center hired to manage the shopping center.[3]  Freedman negotiated the lease amendment on behalf of Clear Lake Center.  Dave Spargo was a consultant to Garden Ridge during the bankruptcy and negotiated assumption agreements with landlords like Clear Lake Center.  Brigitte Kimichik was Garden Ridge's lawyer assisting on the amendment to the lease.

Under the amendment, Garden Ridge was required to pay Clear Lake Center an agreed cure amount that included the 2003 CAM cost of more than $82,000. The $58,000 management fee was included in this CAM cost.  Clear Lake Center

---

[3] Freedman signed the property management agreement on behalf of both entities.

also made some concessions, like lowering the rent, allowing the cure amount to be paid off over time without interest, and giving Garden Ridge a credit against future rents for up to $150,000 in new heating and air conditioning units.

Clear Lake Center's affirmative defenses are based on the following provisions in the amendment:

> Subject to Section 10 of this Amendment, any defaults or any offsets and defenses by either Lessor or Lessee under the Lease and existing (or which may exist after the giving of notice or passage of time) on the date of this Amendment (except as otherwise specifically addressed in this Amendment) are hereby waived by Lessee and Lessor, and Lessee and Lessor hereby release each other from all liabilities, claims, controversies, causes of action and other matters of every nature which, through the date hereof, have or might have arisen out of or in any way in connection with the Lease and/or the Demised Premises demised thereunder.
>
> . . . .
>
> Lessee represents that . . . (ii) except with respect to the amounts that comprise the Agreed Cure Amount, there exists no breach, default, event or condition which, with the giving of notice or the passage of time, or both, would constitute a breach or default under the lease either by Lessee or Lessor; and (iii) except as provided otherwise in this Agreement, Lessee has no existing claims, defenses or offsets against rental due or to become due under the Lease.

The jury charge asked the following two questions about Clear Lake Center's affirmative defenses:

## QUESTION NO 2

Was Clear Lake Center's failure to comply excused?

> Failure to comply by Clear Lake Center is excused if compliance is waived by Garden Ridge. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.
>
> Failure to comply by Clear Lake Center is excused if the parties agreed that a new agreement would take its place. In deciding

7

whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Failure to comply by Clear Lake Center is excused if a different performance was accepted as full satisfaction of performance of the original obligations of the agreement.

Failure to comply by Clear Lake Center is excused if the following circumstances occurred

1     Garden Ridge

a     By words or conduct made a false representation or concealed material facts, and

b     With knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts, and

c     With the intention that Clear Lake Center would rely on the false representation or concealment in acting or deciding not to act, and

2     Clear Lake Center

a     Did not know and had no means of knowing the real facts and

b     Relied to its detriment on the false representation or concealment of material facts.

## QUESTION NO 3

Is Garden Ridge estopped from complaining of Clear Lake Center's failure to comply?

To find estoppel, you must find that Garden Ridge took some voluntary action concerning the management fee on which Clear Lake Center relied in good faith, which led Clear Lake Center to change the position it held prior to such action, to its detriment and that to now allow Garden Ridge to challenge the management fee would be contrary to its initial action, and would result in harm to Clear Lake Center.

The jury answered "no" to these questions.

8

## B.    The Excluded Evidence

In its brief, Clear Lake Center refers specifically to three categories of excluded evidence: (1) Exhibits 16A through 16F (collectively Exhibit 16) consisting of several e-mails exchanged during the negotiation of the amendment to the lease, (2) cross-examination of Garden Ridge's witnesses about negotiations concerning the amendment, and (3) Freedman's testimony about the negotiations.[4] We now review each category of evidence to identify what was excluded and preserved.

### 1. *Exhibit 16*

The trial court sustained Garden Ridge's parol evidence objection to Exhibit 16. Exhibit 16 is part of the record on appeal and includes several e-mails concerning the negotiations of the amendment to the lease. On appeal, Clear Lake Center focuses on several passages from three of these e-mails: Exhibits 16C, 16E, and 16F.

Exhibit 16C includes a November 15, 2004 e-mail from Spargo to Clear Lake Center's lawyer Michael Durrshmidt and Freedman. Spargo wrote: "[A]fter our accounting department reviewed the revised Cure amounts they would like some more information to support the following numbers: PRIOR CAMS -

---

[4] Additionally, in a footnote in its brief, Clear Lake Center cites to twenty-seven pages of the reporter's record where Clear Lake Center contends that the trial court made rulings on Garden Ridge's parol evidence objections. None of these citations, however, indicates the trial court excluded evidence. Some of these citations refer to a pretrial discussion about Garden Ridge's motion in limine, which does not constitute a ruling on the admission of evidence. *See Union Carbide Corp. v. Burton*, 618 S.W.2d 410, 415 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Some of the citations refer to the trial court overruling Garden Ridge's objections, including Garden Ridge's objections to Kimichik's deposition testimony. Some of the citations refer to Clear Lake Center's opening argument demonstrative exhibits. And some of the citations refer to no objections or discussion of the parol evidence rule at all.

$82,573.33 . . . .  They don't have records for these amounts and need something to support/understand those amounts/costs."

Exhibit 16E includes a November 29, 2004 e-mail from Kimichik to Durrshmidt, stating that "the cure amounts are still bracketed" and Garden Ridge "is checking on these amounts and they are still open."

Exhibit 16F includes a January 27, 2005 e-mail from Spargo to Durrshmidt and Freedman.  Spargo wrote to Freedman in particular:

> Would you please give me a call so we can discuss the CAM estimates going forward for 2005.  The CAM estimate has been approximately $8,500 per month and we understand that last year there was some extraordinary expenses (and we have agreed to pay those as part of the Cure).  However, it looks like the estimate for 2005 is around $15,000 per month which seems excessive.  Some reasonable increase over the $8,500 amount would seem to be more realistic.  Let's discuss so there is no misunderstanding going forward.

### 2.  Cross-Examination

Clear Lake Center contends, without citation to the record, that the trial court prevented Clear Lake Center from (1) asking Garden Ridge witnesses about "what it did to check on the cure amounts" as discussed in Exhibit 16E, and (2) cross-examining witnesses about Exhibit 16.  Clear Lake Center does not identify who it was prohibited from questioning.  Thus, regarding cross-examination of Garden Ridge's witnesses, Clear Lake Center's brief does not include "a clear and concise argument for the contention[] made, with appropriate citations . . . to the record."  Tex. R. App. P. 33.1(i).

Further, the record does not contain an offer of proof for excluded cross-examination of any of Garden Ridge's witnesses regarding Exhibit 16.  The party seeking the admission of evidence must inform the court of the substance of the evidence by an offer of proof unless the substance was apparent from the context.

10

*See* Tex. R. Evid. 103(a)(2); *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 511 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The primary purpose of making an offer of proof is to enable an appellate court to determine whether the exclusion of the evidence was erroneous and harmful. *Ludlow v. DeBerry*, 959 S.W.2d 265, 270 (Tex. App.—Houston [14th Dist.] 1997, no writ). Another purpose is to permit the trial judge to reconsider the ruling in light of the actual evidence. *Id.*

By failing to show "what questions counsel intended to ask" and, more importantly, "how the witnesses would have responded," Clear Lake Center has not made an offer of proof regarding any excluded cross-examination of Garden Ridge's witnesses. *See Quiroz v. Llamas-Soforo*, 483 S.W.3d 710, 722–23 (Tex. App.—El Paso 2016, pet. filed) (overruling complaint about the exclusion of a photograph and associated cross-examination of the defendant's experts when trial counsel did not show what questions counsel would have asked and the associated answers). Without knowing what the witnesses would have said, "we cannot determine whether the exclusion of the evidence probably caused the rendition of an improper judgment and can be the basis for reversible error." *Id.* at 723; *see also In re Commitment of Young*, 410 S.W.3d 542, 556–57 (Tex. App.—Beaumont 2013, no pet.) (overruling the appellant's contention about the restriction of cross-examination testimony about an expert's rate of error because the appellant had "not identified the answers he expected to receive from [the expert] to the proffered questions").[5]

---

[5] Having reviewed the record, we note also that the trial court did not prohibit cross-examination of any witness about Exhibit 16. On the contrary, as Clear Lake Center acknowledges in its brief, the trial court admitted Clear Lake Center's proffered testimony from Kimichik's deposition where she testified about Exhibit 16E.

11

### 3. Freedman's Testimony

Freedman testified at trial. Clear Lake Center did not question him about what he told Spargo or others concerning the management fee. Several days after Freedman testified, and immediately before the charge conference, Clear Lake Center made the following offer:

> Your Honor, I want to supplement our offer of proof from Thursday. If the Court would permit it, we would call Edwin Buster Freedman to testify about the conversation that he had with Dave Spargo related to the negotiations of the second amendment to the lease.
>
> Exhibit 12, Exhibit 16-F is a January 27th, 2005 e-mail between Spargo, Freedman, Kimichik, Durrschmidt and a variety of other people—it's not privileged—discussing the conversation.
>
> Mr. Freedman will testify that he informed Spargo, completely, about all of the facts that are at issue in this trial; and we tender that testimony, Your Honor.

If made by counsel, an offer of proof must "reasonably and specifically summarize the evidence," and counsel must "describe the actual content of the testimony." *PNS Stores*, 484 S.W.3d at 511. We hold that Clear Lake Center's offer of Freedman's additional testimony is not sufficiently specific to enable this court to determine whether the exclusion was erroneous and harmful.

Several cases from this court highlight the distinction between sufficient and insufficient offers of proof. In *In re N.R.C.*, a parental termination case, this court held that an offer of proof was sufficient. 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The mother had made an offer for one witness by offering a letter to the court that the witness had authored. *Id.* at 805. The letter described the witness's observations of the mother and discussed her progress and suitability as a parent and the opinion that supervised visits would provide opportunities for the mother to develop positive relationships with her

children. *Id.* at 805–06. The mother also offered other witnesses and said they would testify about the best interests of the children. *Id.* at 806. This court reasoned that because the mother referred to the "best interests of the children," the offer of proof would have invoked the relevant factors promulgated by the supreme court, and therefore, the mother adequately described the substance of the proposed testimony. *Id.*

Recently this court held an offer of proof was sufficient in *PNS Stores*, 484 S.W.3d at 511. The plaintiff suffered a concussion after some objects fell off a shelf in the defendant's store and struck the plaintiff while the defendant's employee was stocking merchandise. *See id.* at 508–09. The trial court excluded the defendant's expert's testimony after "question[ing] the parties at length concerning [the expert's] qualifications and the basis for her anticipated testimony." *Id.* at 511. The defendant told the trial court that the expert could testify about "whether similar products in similar big box stores were displayed in a safe manner and at a safe level, whether warnings or barricades were needed during stocking, and whether stocking should be done at certain times of day." *Id.* This court held that the description of the expert's testimony adequately summarized the substance to preserve error. *Id.*

On the other hand, this court held in *Watts v. Oliver*, a child custody case, that an offer of proof was insufficient. 396 S.W.3d 124, 129 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The father offered the testimony of a psychologist who had provided counseling and therapy to the father. *Id.* at 127. The father described the testimony: (1) "regarding efforts taken by [the father] to co-parent with [the mother] and to minimize conflicts with the child," (2) "regarding the effects of [the mother's] actions on the child, potentially on the child's relationship with both parents," and (3) "regarding general psychological issues affecting children of

13

divorced parents and of parents who engage in actions [the mother] has engaged in." *Id.* at 128.[6] This court held the offer of proof was insufficient because it did not "describe the actual content of his testimony" and was merely a general comment about the nature of the evidence. *Id.* at 129.

As in *Watts*, Clear Lake Center's offer of proof did not describe the actual content of Freedman's testimony. Clear Lake Center referred only generally to a "conversation . . . with Dave Spargo related to the negotiations," during which Freedman told Spargo "about all of the facts that are at issue in this trial." Clear Lake Center did not inform the trial court how Freedman's testimony would relate to any of the affirmative defenses. On appeal, Clear Lake Center relies on this offer to argue that the excluded evidence would show (1) "what information Clear Lake provided" to Garden Ridge during the amendment negotiations, (2) "Garden Ridge's focus on the CAM charges, and information available to Garden Ridge— that which it asked for and that which it did not—during the negotiations," and (3) "what Garden Ridge knew and what it considered important to find out before contractually waiving and releasing past breaches." Clear Lake Center contends the "key issue" is "whether Garden Ridge had knowledge or the means of acquiring knowledge and thereby was estopped to claim the breach it alleged."

But the actual substance of this "information" and what Garden Ridge "knew" is not identified by the offer of proof at trial. The reference to "all of the facts that are at issue in this trial" is not as specific as a reference to a particular legal concept, such as "best interest of the child" in a parental termination case. *See In re N.R.C.*, 94 S.W.3d at 806. Thus, we cannot determine from this offer of proof whether the trial court abused its discretion by excluding any evidence and,

---

[6] The father also offered the testimony to show the father's "efforts in working with [the doctor] to minimize such harm to the child," and the trial court allowed the doctor to testify about the father's therapy. *See* 396 S.W.3d at 128.

14

especially, whether the exclusion was harmful.  The offer of proof for Freedman's testimony is insufficient to preserve the issue for appeal.

## C.    No Harmful Error

For these reasons, the only ruling preserved for our review is the trial court's exclusion of Exhibit 16.  Assuming without deciding that the trial court erred by excluding Exhibit 16, we hold that Clear Lake Center has not demonstrated harm.

To obtain a reversal based on the exclusion of evidence, the complaining party need not show that "but for" the exclusion a different judgment necessarily would have resulted. *See State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009).  "The exclusion of evidence is reversible error if the complaining party shows that the trial court committed error that probably caused the rendition of an improper judgment." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2012); *see* Tex. R. App. P. 44.1(a).

In making this determination, we review the entire record. *Cent. Expressway*, 302 S.W.3d at 870.  The role that the excluded evidence played in the context of the trial is important. *Id.*  If the excluded evidence was crucial to a key issue, the error is likely harmful. *Id.*  But if the evidence was cumulative or the rest of the evidence at trial was so one-sided that the error likely made no difference in the judgment, then the error is likely harmless. *Id.*  "Generally, exclusion of evidence is not reversible error unless the complaining party demonstrates that the whole case turns on the particular evidence excluded." *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 274 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995) ("A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.").

15

Initially, we note that the content of the Exhibit 16E e-mail was presented to the jury through Kimichik's admitted deposition testimony.[7] Thus, the exclusion of Exhibit 16E cannot be harmful error because it was cumulative of other evidence. *See Bartosh v. Gulf Health Care Ctr.-Galveston*, 178 S.W.3d 434, 440 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("The exclusion of merely cumulative evidence cannot constitute harmful error.").

Clear Lake Center argues on appeal that the judgment turned on the excluded evidence because the key issue at trial was "whether Garden Ridge had knowledge or the means of acquiring knowledge and, thereby was estopped to claim the breach it alleged." Although Clear Lake Center refers generally to its non-estoppel affirmative defenses, Clear Lake Center does not identify what elements of those defenses are implicated by the excluded evidence. Clear Lake Center contends, "The primary focus of this cross-appeal is the trial court's erroneous exclusion of evidence and the effect of that error on [Clear Lake Center's] affirmative defense of estoppel." Accordingly, we now review the impact of the excluded evidence in light of the estoppel defenses.

---

[7] Kimichik testified:

Q. The one—the e-mail that I'm most curious about is there's an e-mail from you on Bates Page 2075, which is Monday, November 29, 2004, at 10:00 a.m. Do you see that e-mail?

A. Yes.

Q. And if you look down to the third paragraph, in there it says, in Section 4, "The cure amounts are still bracketed. The tenant is checking on these amounts, and they are still opened." You see where I've read?

A. Uh-huh.

. . . .

Q. So, your reference that the tenant is checking on these amounts was to the 82,573.33, among other amounts in it, right?

A. Yes, with respect to past due charge.

16

Question 2 submitted an equitable estoppel defense while Question 3 submitted a quasi-estoppel defense. *See Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 637–38 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (reviewing elements and differences of each type of estoppel); *Cimarron Country Prop. Owners Ass'n v. Keen*, 117 S.W.3d 509, 512 (Tex. App.—Beaumont 2003, no pet.) (reciting a jury instruction similar to Question 3 here that "accurately states the law" of quasi-estoppel (citing *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ))).[8]

Garden Ridge's actual or constructive knowledge of whether Clear Lake Center was calculating the management fee contrary to the terms of the lease at the time Garden Ridge signed the amendment may be relevant to Clear Lake Center's equitable estoppel defense. That is, the equitable estoppel defense in Question 2 required proof that Garden Ridge made a false representation or concealed a material fact "with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts."[9] But, another element of this defense required Clear Lake Center to prove that it "did not know and had no means of knowing the real facts."

---

[8] On appeal, Clear Lake Center contends that Question 3 submitted an estoppel defense while Question 2 submitted the defenses of waiver, novation, ratification, and accord and satisfaction. However, Clear Lake Center repeatedly argues that the excluded evidence would show what Garden Ridge "knew" or "should have known" and that such actual or constructive knowledge relates to Clear Lake Center's estoppel defense. Question 3 (quasi-estoppel) does not include elements about actual or constructive knowledge. *See Keen*, 117 S.W.3d at 512. The final "excuse" listed in Question 2 (equitable estoppel), however, includes these elements. *See Comiskey*, 373 S.W.3d at 637. Therefore, although Clear Lake Center does not contend that Question 2 submitted an estoppel defense, we will review the excluded evidence as it relates to both estoppel defenses in Questions 2 and Question 3 out of an abundance of caution.

[9] Clear Lake Center's position is that the misrepresentation occurred when Garden Ridge signed the amendment to the lease and thereby acknowledged that there was "no breach" then existing. Clear Lake Center does not contend that there were any extra-contractual misrepresentations.

Even if we assume that any excluded evidence would have shown Garden Ridge knew or should have known that Clear Lake Center was calculating a management fee contrary to the terms of the lease, we cannot hold that the whole case turned on evidence of Garden Ridge's knowledge because there is no evidence that Clear Lake Center "did not know and had no means of knowing the real facts." As we held in the prior appeal, the lease unambiguously limits the allowable management fee to sums expended for the management and maintenance of the common area—not the property as a whole. *See Clear Lake*, 416 S.W.3d at 537. At trial, Garden Ridge presented unrebutted evidence that the management fee Clear Lake Center charged Garden Ridge was for managing the property as a whole, rather than solely the common area as required by the lease.[10]

Clear Lake Center is "charged with having known the legal effect of a contract voluntarily made." *Barfield v. Howard M. Smith Co. of Amarillo*, 426 S.W.2d 834, 838–39 (Tex. 1968) (holding that the tenant could not assert estoppel as a matter of law when the tenant underpaid rent due to an erroneous application of the lease's terms; the tenant "had a copy of the lease, which the trial court held was clear and unambiguous, and prepared the annual statements in which the improper method of computation was used," and therefore the tenant was not "without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented"). Clear Lake Center is charged with knowledge of the lease and the property management agreement, and Clear

---

[10] The property management agreement between Clear Lake Center and United Equities was an exhibit at trial. A Garden Ridge employee testified that various tasks required by the agreement were not for management of the common area. Garden Ridge's auditor also testified as to his belief that "[t]he vast majority of the services [in the property management agreement] is related to managing the overall shopping center, not specifically the common area only." One of United Equities' employees testified that the "majority of our time is spent on the common area," thus acknowledging that some of their time was not spent on the common area.

18

Lake Center is the party who estimated the management fees and prepared the annual reconciliations.

Accordingly, the exclusion of evidence concerning one of the elements of this estoppel defense—Garden Ridge's actual or constructive knowledge of the breach—could not have caused the rendition of an improper judgment because there is no evidence of one of the other elements of this defense. *See State Farm Lloyds v. Fuentes*, No. 14-14-00824-CV, 2016 WL 1389831, at \*6–7 & n.7 (Tex. App.—Houston [14th Dist.] Apr. 7, 2016, pet. filed) (mem. op.) (holding that the debtor failed to show that any error was harmful concerning the exclusion of evidence of the excessiveness of a demand for payment because there was no evidence of a different element of the excessive-demand affirmative defense, i.e., that the debtor tendered and the creditor refused the amount actually due); *cf. Sears Roebuck & Co. v. ACM Eng'g & Envtl. Servs.*, No. 14-11-00363-CV, 2012 WL 1137912, at \*3 (Tex. App.—Houston [14th Dist.] Apr. 3, 2012, no pet.) (mem. op.) (noting that the exclusion of evidence is moot in the context of a no-evidence summary judgment when, even considering the excluded evidence, there is no evidence of one of the elements of the claim); *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 784 (Tex. App.—Dallas 2005, pet. denied) (holding that the exclusion of evidence concerning damages was not harmful because there was no evidence to support liability).

Regarding the quasi-estoppel issue in Question 3, Garden Ridge's actual or constructive knowledge is not an element that Clear Lake Center had to prove. Clear Lake Center had to prove, however, that Garden Ridge's "voluntary action concerning the management fee . . . led Clear Lake Center to change the position it held prior to such action." There is no evidence in the record that Clear Lake Center changed its position and agreed to the amendment of the lease because of

19

Garden Ridge's "action concerning the management fee." To the contrary, Freedman testified that he made concessions in the amendment such as reducing the rent because he "was doing things [he] could to try to keep Garden Ridge there." He waived interest authorized by the lease because he was "trying to do whatever [he] could do in a reasonable manner to keep Garden Ridge as my 150,000 foot tenant." Thus, Clear Lake Center has not established that the exclusion of evidence probably caused the rendition of an improper judgment. *See Fuentes*, 2016 WL 1389831, at *6–7 & n.7.

Clear Lake Center's second and third issues are overruled.

### III.   GARDEN RIDGE'S ATTORNEY'S FEES

In its fourth issue, Clear Lake Center contends "Garden Ridge is not entitled to recover attorney's fees as found by the jury." In the one-page section of its brief, Clear Lake Center argues (1) there are no sustainable findings of liability and damages, (2) "the evidence shows that some of the fees claimed by Garden Ridge were not incurred by Garden Ridge," and (3) the exhibit evidencing those fees "should not have been admitted over Clear Lake's objection and, therefore, [the] evidence to support the jury's response to Question 5 [regarding the amount of Garden Ridge's attorney's fees] is insufficient."

This issue is multifarious because it embraces more than one specific ground of error, and we may disregard it. *See Bell v. Tex. Dep't of Crim. Justice-Inst. Div.*, 962 S.W.2d 156, 157 n.1 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). We will consider multifarious points of error if we can determine with reasonable certainty the alleged error. *Id.*; *see also* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

20

The only authority cited in this section of the brief is the general attorney's fees statute, *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001, for the proposition that Garden Ridge cannot recover fees without sustainable findings of liability and damages. *Cf.* Tex. R. App. P. 38.1(i) (requiring "appropriate citations to authorities"). Clear Lake Center does not refer to the standard of review, cite any other legal authority, or analyze the facts of the case under the appropriate legal authority in such a manner to demonstrate that the trial court committed reversible error. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931–32 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also Vo v. Doan*, No. 14-14-00994-CV, 2016 WL 3574671, at *9 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet. h.) (mem. op.) (overruling several issues because the appellants waived error by inadequate briefing when they provided no legal authority or analysis applying appropriate authority and made no specific arguments or analysis citing authorities in support of their arguments).

But even if Clear Lake Center's briefing were sufficient, the record supports an award of $350,000 in trial attorney's fees to Garden Ridge. Initially, as explained above, there are sustainable findings of liability and damages as prerequisites for an award of attorney's fees under Section 38.001. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 666 (Tex. 2009) (holding that to recover fees under this statute, a litigant must prevail on a breach of contract claim and recover damages).

The crux of Clear Lake Center's complaint appears to be that the evidence is insufficient to support the amount of attorney's fees because Garden Ridge's Exhibit 90 included fees billed by the law firm Andrews Kurth LLP to "a non-party venture capital firm called Three Cities Venture," according to Clear Lake

21

Center. Clear Lake Center contends that Garden Ridge "claimed fees" incurred by this non-party.[11]

Garden Ridge presented testimony that a reasonable and necessary fee for trial and preparation would be in the range of $650,000 to $850,000. The trial court admitted Exhibit 88, among other documents, showing that Garden Ridge incurred fees directly from law firms other than Andrews Kurth of at least $689,663.25. Clear Lake Center presented evidence that its own reasonable attorney's fees were $350,000 to $400,000.[12]

Accordingly, the jury's finding of $350,000 was within the range of evidence presented. The evidence supports the amount of fees that the jury awarded even if only non-Andrews Kurth fees are considered. Under these circumstances, the evidence is sufficient to support the jury's award of $350,000. *See Ropa Expl. Corp. v. Barash Energy, Ltd.*, No. 02-11-00258-CV, 2013 WL 2631164, at *12 (Tex. App.—Fort Worth June 13, 2013, pet. denied) (affirming jury's award of attorney's fees despite the lack of documentary evidence supporting the award when the award was within the range of evidence presented at trial); *Pitts v. Dallas Cty. Bail Bond Bd.*, 23 S.W.3d 407, 415 (Tex. App.—Amarillo 2000, pet. denied) (affirming trial court's award of attorney's fees because the amount was within the range supported by the evidence); *see also, e.g.*, *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 713 (Tex. 2016) ("The

---

[11] Clear Lake Center does not identify the amount of "claimed fees" incurred by the non-party in its brief. At oral argument, Clear Lake Center suggested the total amount was in the "$90,000 range," and the actual amount is included in Exhibit 90. This exhibit is over 300 pages and does not appear to identify the total amount incurred. We assume for purposes of this issue that the amount is $90,000.

[12] During closing argument, Clear Lake Center told the jury that Garden Ridge's attorney's fees "can't be bigger than mine and . . . y'all can pick any number you want," but Clear Lake Center recommended finding $250,000 for Garden Ridge's attorney's fees.

22

jury generally has discretion to award damages within the range of evidence presented at trial.").

Clear Lake Center's fourth issue is overruled.

## IV. STATUTE OF LIMITATIONS

In the prior appeal, this court held that all claims accruing before September 10, 2005 are barred by the statute of limitations. *Clear Lake*, 416 S.W.3d at 543. In its fifth issue, Clear Lake Center contends that the statute of limitations bars part of the jury's award for the 2005 CAM management fees. Specifically, Clear Lake Center argues that each monthly payment by Garden Ridge separately triggered the statute of limitations, so Garden Ridge's claims based on payments made from January through September 2005 are barred. Garden Ridge contends that the lease's "reconciliation" timetable governed the accrual of claims for purposes of the statute of limitations, so limitations did not accrue until 210 days after the end of the year—July 29, 2006.

We agree with Clear Lake Center that limitations accrued for each monthly payment. Thus, damages for January through September 2005 are barred by the statute of limitations.

## A. Background

It is undisputed that in 2005 Garden Ridge paid monthly the estimated CAM costs as well as rent and other payments due under the lease. The lease requires Garden Ridge to pay estimated CAM costs on the first of each month. The lease also provides for a reconciliation after each calendar year whereby Clear Lake Center calculates the actual CAM costs and either Garden Ridge pays any deficiency or Clear Lake Center reimburses Garden Ridge for any excess amounts that Garden Ridge has paid. Under the lease, Clear Lake Center has 180 days to

determine its actual CAM costs and thirty days to refund Garden Ridge for any excess amount that Garden Ridge has paid.

Ultimately, Garden Ridge paid Clear Lake Center a management fee of $75,561.47 in 2005. Garden Ridge's expert testified that a reasonable management fee of three percent of total CAM costs attributable to Garden Ridge was about $3,000 for 2005. Consistent with this testimony, Garden Ridge asked the jury to subtract the $3,000 fee from the amount Garden Ridge paid, round down, and award Garden Ridge damages of $72,000 for the amount Garden Ridge was overcharged in 2005. The damages question in the jury charge asked the jury to assess damages for each calendar year. The jury awarded Garden Ridge damages of $72,000 "for calendar year 2005."

## B. Legal Principles and Analysis

"[W]hen a cause of action accrues is a question of law, not fact." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). "As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.* A breach of contract action accrues when the contract is breached. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

In general, leases requiring monthly payments have been treated as installment contracts, and the statute of limitations begins to run for separate breach of contract claims on each monthly payment. *See Discovery Group , Inc. v. Kammen*, No. 01-15-00243-CV, 2015 WL 7300690, at *3 (Tex. App.—Houston [1st Dist.] Nov. 19, 2015, pet. denied) (mem. op.) (reasoning that leases "are

24

treated as installment contracts for the purposes of the accrual of a cause of action and the running of the applicable statute of limitations" based on clear Texas law, and a separate cause of action arises for each missed payment when the contract requires fixed, periodic payments); *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 464–66 (Tex. App.—Austin 1994, no writ) (holding that "lease payments should be treated in the same manner as installment contracts, with limitations running separately on each missed payment"), *cited with approval in Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 68 n.14 (Tex. 2015) (concerning periodic royalty payments under an oil and gas lease); *see also Trelltex, Inc. v. Intecx, L.L.C.*, No. 14-14-00578-CV, 2016 WL 1051786, at *3 (Tex. App.—Houston [14th Dist.] Mar. 15, 2016, no pet. h.) (noting in the limitations context that "[w]hen the terms of an agreement call for fixed, periodic payments, however, a separate cause of action arises for each missed payment").

The cases cited above involved a party's failure to make periodic payments under a contract. Nonetheless, we hold that the same principles governing the nonpayment of monthly rents or other periodic amounts should apply, as here, when a party has paid monthly payments in excess of the amount it owed due to the other party's overcharges. In *Tanglewood Terrace, Ltd. v. City of Texarkana*, for example, the City overcharged an apartment complex for water, which the apartment complex paid monthly. *See* 996 S.W.2d 330, 334, 337 (Tex. App.—Texarkana 1999, no pet.). The court of appeals reasoned that a separate claim accrued upon the payment of each monthly bill that contained overcharges. *See id.* at 337. Although the claim in *Tanglewood* was for money had and received, the same principles govern the instant case: Garden Ridge suffered a legal injury each time it overpaid the CAM costs.

25

Garden Ridge attempts to shift the accrual of limitations to a later date by arguing that each breach of the lease occurred only after Clear Lake Center failed to properly reconcile the overpayments at the end of each year. It is true that Clear Lake Center may have breached *again* by failing to reconcile the overcharges, but this later breach would not negate the earlier breaches that occurred on a monthly basis when Clear Lake Center's wrongful acts caused a legal injury. *Cf. Barker v. Eckman*, 213 S.W.3d 306, 309, 311 (Tex. 2006) (holding that in a breach of a bailment agreement case, limitations accrued for numerous individual breaches occurring throughout the years and claims based on those breaches accrued immediately upon the occurrence of each breach; limitations accrued every time the bailee overcharged the bailor for storage of the property, rather than when the bailor made a later demand upon the bailee). Garden Ridge could have sought a judicial remedy each time it paid an inflated CAM fee.[13]

Garden Ridge relies on *TH Healthcare Ltd. v. Patino*, a case involving a "relocation agreement" providing that a medical center would pay monthly payments to a doctor totaling about $170,000 per year. No. 13-06-602-CV, 2007 WL 2128909, at *1 (Tex. App.—Corpus Christi July 26, 2007, pet. denied) (mem. op.). If at the conclusion of the year the doctor's collections exceeded $170,000, the agreement required the doctor to repay the medical center the excess amounts

---

[13] Garden Ridge's analysis of limitations would mean that Clear Lake Center could charge any amount it wanted, untethered to reality, for the monthly periodic payments so long as Clear Lake Center refunded the money 210 days after the year's end. For example, if Clear Lake Center charged Garden Ridge a billion dollars per month, then under Garden Ridge's analysis Clear Lake Center would not be in breach of the contract so long as Clear Lake Center refunded the money after the reconciliation. Garden Ridge's position concerning limitations would lead to an absurd result. *Cf. TH Healthcare Ltd. v. Patino*, No. 13-06-602-CV, 2007 WL 2128909, at *1 (Tex. App.—Corpus Christi July 26, 2007, pet. denied) (mem. op.) (refusing to construe a reconciliation provision as a condition precedent because doing so would lead to an absurd result that circumvented the purpose of the statute of limitations; the plaintiff's interpretation would allow it to delay the accrual of the statute of limitations until the plaintiff conducted a reconciliation years later).

26

in six continuous, equal, monthly payments. *Id.* The parties were required to conduct a "reconciliation" sixty days after the end of the year to determine how much the doctor had collected in excess of the $170,000. *Id.* The dispute in the case centered on whether the reconciliation requirement was a condition precedent or covenant, but both parties agreed that the reconciliation provision triggered the accrual date for any cause of action. *See id.* at \*3. Accordingly, the only issue decided in *Patino* was whether the reconciliation was a condition or covenant; *Patino* did not hold that the reconciliation triggered the accrual of the statute of limitations. *See Wood v. HSBC Bank USA, N.A.*, No. 14-0714, 2016 WL 2993923, at \*4 (Tex. May 20, 2016) (reasoning that when the parties agreed on an issue, that issue was not "presented and decided" by the court of appeals).

Furthermore, the reconciliation provision in *Patino* is materially different from the CAM reconciliation here. *Patino* did not involve one party overcharging or overpaying on a monthly basis, as here. The doctor was entitled to the full monthly payment upfront, so there was no breach until the reconciliation occurred and the doctor thereafter underpaid the medical center. *See Patino*, 2007 WL 2128909, at \*4.

This case is more similar to *Hart v. International Telephone & Telegraph Corp.*, where an employee sued her employer for unpaid commissions that were supposed to be paid on a quarterly basis. *See* 546 S.W.2d 660, 661–62 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.). The employment contract provided for an audit of commissions that could be made in January of the year following the quarterly payments "at which time an adjustment or correction of any deficiencies or overages could be made." *Id.* The employee argued that the audit provision meant that limitations accrued for the entire year's commissions in the following January. *See id.* The court of appeals analogized to a case involving monthly

27

rental payments and ultimately disagreed with the employee. *See id.* at 662. The court of appeals held that limitations accrued for each unpaid commission on the date it was supposed to be paid, rather than on the date of a subsequent audit. *Id.*

We hold that Clear Lake Center's breach recurred each month that Garden Ridge overpaid CAM costs based on Clear Lake Center's assessment of an inflated management fee.

## C. Remedy

The parties agreed at oral argument that if we sustain this issue, the judgment should be modified by reducing Garden Ridge's damages a prorated amount for 2005. Accordingly, we will modify the trial court's judgment by reducing the damages associated with monthly payments occurring January through September 2005, i.e., $54,000.

Ordinarily, when damages are reduced on appeal, the appellate court should remand for a new trial on attorney's fees unless the court is "'reasonably certain that the jury was not significantly influenced by the erroneous amount of damages it considered.'" *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex. 2007) (quoting *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006)). The analysis considers both the absolute and relative values of the reduction in damages. *See Barker*, 213 S.W.3d at 314.

On this issue, Clear Lake Center's brief does not contain a clear and concise argument with appropriate citations to authorities. *See* Tex. R. App. 38.1(i). And Clear Lake Center did not provide this court with further guidance at oral argument or afterward.[14] "We are not required to do the job of the advocate." *Lundy v.*

---

[14] At oral argument, Clear Lake Center initially asked this court to "formulaically adjust" the attorney's fees. But an appellate court cannot do so. *See Barker*, 213 S.W.3d at 314–15 (refusing to adopt a "presumptive proportionality" construct for suggesting a remittitur on

28

*Masson*, 260 S.W.3d 482, 503 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Without an unequivocal request from Clear Lake Center for a new trial on Garden Ridge's attorney's fees,[15] and without further guidance about whether the reduction in damages of less than ten percent indicates the jury was "significantly influenced" by the damages awarded, we decline to remand for a new trial on attorney's fees.

Clear Lake Center's fifth issue is sustained.

## V.   CLEAR LAKE CENTER'S ATTORNEY'S FEES

In its sixth and final issue, Clear Lake Center contends it is entitled to attorney's fees as a matter of law under Section 38.001 of the Texas Civil Practice and Remedies Code, and the jury's finding of $0 for Clear Lake Center's attorney's fees is unsustainable.

At trial, the jury found that Garden Ridge did not breach the lease agreement, but Clear Lake Center was entitled to $5,300 for its money had and received claim. Although Clear Lake Center put on evidence of its attorney's fees, the jury awarded no attorney's fees to Clear Lake Center.

To recover attorney's fees under Section 38.001, a party must "prevail on a cause of action for which attorney's fees are recoverable." *Green Int'l, Inc. v.*

---

attorney's fees). Then, Clear Lake Center asked this court to remand the issue of attorney's fees for a new trial. This court noted that Garden Ridge presented evidence of significantly more fees than the jury awarded, and this court asked, "Are you sure you want it?" Clear Lake Center asked, "Do I need to commit today, is the question?" This court said, "You do not have to tell us today. Just think about that." Clear Lake Center did not submit any post-submission briefing.

[15] As noted above, Garden Ridge presented evidence that its fees were significantly more than $350,000. In the prior appeal of this case, a jury had awarded Garden Ridge $530,000 in attorney's fees notwithstanding the fact that liability and damages had been determined by summary judgment.

*Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Recovery on a claim for money had and received does not entitle a party to attorney's fees under Section 38.001. *See Progressive Transp., LLC v. Rep. Nat'l Indus. of Tex., LP*, No. 06-14-00030-CV, 2015 WL 500514, at *11–12 (Tex. App.—Texarkana Feb. 5, 2015, no pet.) (mem. op.) (modifying trial court's judgment to delete the award of attorney's fees because the party prevailed only on a money had and received claim and not a claim under Section 38.001); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 712–14 (Tex. App.—Corpus Christi 2006, pet. denied) (affirming summary judgment on the plaintiff's money had and received claim but reversing the trial court's award of attorney's fees because the summary judgment was erroneous on the plaintiff's breach of contract claim, which was the "only pleaded claim that could sustain an award of attorney's fees"). When a party is not entitled to attorney's fees under a statute as a matter of law, "the jury's finding about the *amount* of reasonable attorney's fees is immaterial." *Holland v. Wal-Mart Stores*, Inc., 1 S.W.3d 91, 94 (Tex. 1999); *see also Hall v. Hubco, Inc.*, 292 S.W.3d 22, 31 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (noting that a trial court may "sua sponte disregard a jury's answer to an immaterial question").

Because Clear Lake Center did not prevail on a cause of action for which attorney's fees are recoverable under Section 38.001, Clear Lake Center was not entitled to attorney's fees.

Clear Lake Center's sixth issue is overruled.

## VI.   CONTRACTUAL INTEREST

In its first issue, Garden Ridge contends the trial court erred by failing to award eighteen percent pre- and postjudgment interest pursuant to the lease. *See* Tex. Fin. Code Ann. § 304.002 (requiring a money judgment on a contract to earn postjudgment interest at a rate equal to the lesser of the rate specified in the

contract or eighteen percent if the contract provides for interest); *id.* § 304.003(c)(2) (requiring a money judgment not subject to Section 304.002 to earn postjudgment interest at a minimum of five percent). Garden Ridge contends the contract unambiguously provides for eighteen percent interest, relying on the following provision:

> Section 4.3. Failure to Pay Rental on Time. Past due Base Rental and other past due payments shall bear interest from maturity at the rate of eighteen percent (18%) per annum, provided, however, in no event shall any such sums bear interest at a rate greater than the highest non-usurious rate permitted by applicable law. All other sums and charges of whatsoever nature required to be paid by Tenant to Landlord pursuant to the terms of this Lease constitute additional rent (whether or not the same be designated "additional rent"), and failure by Tenant to timely pay such other sums or charges may be treated by Landlord as a failure by Tenant to pay Base Rent.

As discussed below, for Garden Ridge to show that the trial court erred by not awarding eighteen percent interest, Garden Ridge must show that the lease unambiguously provides for eighteen percent interest because (1) the issue was not submitted to the jury and (2) if Clear Lake Center's interpretation is reasonable, a fact issue was submitted to the trial court for resolution. Thus, we must affirm the trial court's ruling unless the contract unambiguously provides for eighteen percent interest.

## A. Lease Does Not Unambiguously Provide for Eighteen Percent Interest

Garden Ridge contends that Section 4.3 of the contract distinguishes between "Base Rental" and "other past due payments," and Clear Lake Center's refusal to refund the overcharges for CAM costs was an "other past due payment." Clear Lake Center contends that "other past due payments" is implicitly clarified by the following sentence referring to sums and charges "paid by Tenant to

Landlord." Further, Clear Lake Center contends that no reasonable reading of the lease as a whole supports Garden Ridge's argument.

When interpreting a contract, the primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract. *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011) (orig. proceeding). We must examine and consider the entire writing in an effort to give effect to all provisions so none are rendered meaningless. *Id.* No single provision, taken alone, will be given controlling effect. *Id.*

An unambiguous contract will be construed as a matter of law. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Thus, an unambiguous contract may conclusively establish a matter. *See Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) (party conclusively established its justification defense based on the unambiguous terms of the contract). On the other hand, an ambiguity in a contract creates a fact question. *See Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Whether a contract is ambiguous or unambiguous is a question of law for a court to decide. *Coker*, 650 S.W.2d at 394. A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Id.* at 393.

We hold that the lease does not unambiguously require Clear Lake Center as landlord to pay Garden Ridge as tenant eighteen percent interest for overcharges relating to CAM costs because a reasonable interpretation of the contract is that those overcharges are not "other past due payments" referenced in Section 4.3. Section 6.4 of the lease specifically addresses the process to be followed for the reconciliation of CAM costs:

> Upon the computation of such adjustment (which shall be completed within 180 days following the end of the calendar year to which such

32

adjustment relates) and notice to Tenant, Tenant shall ***pay*** to Landlord the amount of any deficiency, or Landlord shall ***refund*** to Tenant the amount of any excess, as the case may be, such ***reimbursement or payment*** to be made within thirty days following the Tenant's receipt of such statement.

(emphasis added). As shown by the emphasized language, Section 6.4 distinguishes between the Landlord's responsibility to "refund" a "reimbursement" and the Tenant's responsibility to "pay" a "payment." Because Section 6.4 distinguishes between a "reimbursement" and a "payment," it would be reasonable to interpret Section 4.3's use of the term "payment" to not include a "reimbursement" under Section 6.4. Thus, a reasonable interpretation is that Section 4.3's provision of eighteen percent interest on "other past due payments" does not apply to a CAM reimbursement owed to Garden Ridge. Under this reasonable interpretation, the contract would not unambiguously provide for eighteen percent interest on overcharges of CAM costs.

Further support for this interpretation of the contract is found in various provisions that specifically call for interest under a different provision of the contract, Section 27.13. Section 27.13 provides as follows:

Section 27.13. Interest on Late Payments. In the event any installment of Base Rental or any other sum payable by Tenant to Landlord under the provisions of this Lease is not received within five (5) days after its due date for any reason whatsoever, it is agreed that the amount thus due shall bear interest at the maximum contractual rate which legally could be charged under the laws of the State of Texas in the event of a loan of such rental or other sum to Tenant (but in no event to exceed 18% per annum), such interest to accrue continuously on any unpaid balance due to Landlord by Tenant during the period commencing with the aforesaid due date and terminating with the date on which Tenant makes full payment of such amounts to Landlord. Any such interest shall be payable as additional rent hereunder.

33

Other sections of the lease specifically reference Section 27.13 with the intent to identify the amount of interest that could be recovered in certain situations. For example, Section 8.1 concerns Garden Ridge's right to make repairs and obtain reimbursement from Clear Lake Center "together with interest thereon at the rate specified in Section 27.13." Section 19.4 concerning "tenant's remedies," however, does not refer to a contractual rate of interest by reference to Section 27.13, Section 4.3, or otherwise. Instead, Section 19.4 allows Garden Ridge to offset a percentage of its Base Rental payments due under the lease by the amount of any damages in a court's final judgment "together with interest thereon as provided for in said judgment." These sections of the lease show that the parties understood how to assess interest on particular payments or reimbursements, yet they chose to not do so for CAM reimbursements.

Accordingly, the contract does not unambiguously provide for eighteen percent interest on Clear Lake Center's overcharges of CAM costs.

## B. Trial Court Did Not Err by Adopting Clear Lake Center's Interpretation

Having concluded that Clear Lake Center's interpretation of the lease is reasonable, we hold that the trial court did not err by refusing to award Garden Ridge eighteen percent contractual interest.

Issues excluded from the jury charge that are "not conclusively established under the evidence and no element of which is submitted or requested are waived." Tex. R. Civ. P. 279. But when a ground of recovery is not conclusively established and an element has been submitted to and found by the jury, "the parties are considered to have agreed to waive a jury trial on the elements that were not submitted, and to have submitted those issues to the trial court for resolution." *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 676–77 (Tex. App.—Houston [1st

34

Dist.] 2008, pet. denied). "Prejudgment interest falls within the common-law meaning of 'damages.'" *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 898 (Tex. 2000).

Because the lease does not conclusively establish Garden Ridge's right to eighteen percent interest, but other elements of its claims were submitted, the parties submitted the interest issue to the trial court for resolution. *See VR Elec.*, 276 S.W.3d at 676–77. And as discussed above, our review of the lease as a whole supports the trial court's implied finding that Clear Lake Center's overcharge of CAM costs was not a "past due payment" under Section 4.3 that would bear interest at the rate of eighteen percent. Thus, the trial court did not err by refusing to award Garden Ridge eighteen percent interest.

Garden Ridge's first issue is overruled.

## VII.  PREJUDGMENT INTEREST

In its second and final issue, Garden Ridge contends the trial court abused its discretion by failing to award prejudgment interest at the statutory rate of five percent. At oral argument before this court, Clear Lake Center conceded that Garden Ridge was entitled to five percent prejudgment interest.[16] In its brief, Garden Ridge argues that prejudgment interest began to accrue 211 days after the end of each calendar year for each year's damages because that date is when Clear Lake Center breached the lease on an annual basis in accordance with the "reconciliation" provision discussed above. But Garden Ridge suggested at oral

---

[16] When addressing whether Garden Ridge was entitled to prejudgment interest, Clear Lake Center said, "I'm not going to tell you there shouldn't be five percent interest. . . . I'm not going to disagree that five percent prejudgment, five percent postjudgment, is correct under the law. I think the law is correctly laid out at its basis from where we start in Garden Ridge's brief."

argument that if Clear Lake Center breached the lease on a monthly basis instead, then prejudgment interest should accrue for each claim on a monthly basis.

Under Texas Supreme Court precedent, a breach of contract claim that accrues before suit is filed begins to earn prejudgment interest "on the earlier of (1) 180 days after the date a defendant receives written notice of the claim or (2) the date suit is filed." *Johnson & Higgins of Tex. Inc., v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 531 (Tex. 1998) (adopting the statutory method of accrual for common law prejudgment interest on contract claims); *see also May v. Ticor Title Ins.*, 422 S.W.3d 93, 103 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing Tex. Fin. Code Ann. § 304.104). It is undisputed that Clear Lake Center first received written notice of the claims less than 180 days before Garden Ridge filed suit. Thus, prejudgment interest accrued for claims predating the suit on the date suit was filed: September 10, 2009. We will calculate prejudgment interest for pre-suit claims starting on September 10, 2009.

Garden Ridge has not argued in this court nor the trial court that its post-suit claims accruing after September 10, 2009, should begin to earn interest on September 10, 2009. Instead, Garden Ridge has argued that interest should begin to accrue when each breach of contract claim accrued. Accordingly, consistent with Garden Ridge's argument and Clear Lake Center's agreement that Garden Ridge is entitled to prejudgment interest, we grant Garden Ridge the relief it requested at oral argument: interest accruing on a monthly basis for each post-suit breach. *See Zaidi v. Shah*, No. 14-14-00855-CV, __ S.W.3d __, 2016 WL 4705133, at *8–9 (Tex. App.—Houston [14th Dist.] Sept. 8, 2016, no pet. h.) (neither the trial court nor the court of appeals may award more relief than requested).

We have calculated the prejudgment interest in Appendix A of this opinion.[17] We will modify the trial court's judgment to include prejudgment interest of $116,766.93.

Garden Ridge's second issue is sustained.

## VIII. CONCLUSION

We have sustained Clear Lake Center's fifth issue and Garden Ridge's second issue and overruled the remainder of the parties' issues. Thus, we modify the trial court's judgment to (1) reduce Garden Ridge's damages to $540,700.00 and (2) award Garden Ridge prejudgment interest of $116,766.93. The judgment is affirmed as modified.

/s/     Sharon McCally
        Justice

Panel consists of Justices Christopher, McCally, and Busby.

---

[17] The formula for calculating prejudgment interest is as follows: "Amount x Interest Rate x Time. Time is calculated by counting the number of days that have elapsed and dividing that by the number of days in a year (365)." *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 716 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Prejudgment interest accrues from the accrual date until the day preceding the date of the judgment—in this case May 18, 2015. *See* Tex. Fin. Code Ann. § 304.104.

## APPENDIX A – PREJUDGMENT INTEREST TABLE

| Accrual Date | Amount | Time (Years) | Interest |
|---|---|---|---|
| 09/10/2009 | $280,249.97 | 5.6904 | $79,736.73 |
| 10/01/2009 | $6,583.33 | 5.6329 | $1,854.15 |
| 11/01/2009 | $6,583.33 | 5.5479 | $1,826.20 |
| 12/01/2009 | $6,583.33 | 5.4658 | $1,799.14 |
| 01/01/2010 | $6,666.67 | 5.3808 | $1,793.61 |
| 02/01/2010 | $6,666.67 | 5.2959 | $1,765.30 |
| 03/01/2010 | $6,666.67 | 5.2192 | $1,739.73 |
| 04/01/2010 | $6,666.67 | 5.1342 | $1,711.42 |
| 05/01/2010 | $6,666.67 | 5.0521 | $1,684.02 |
| 06/01/2010 | $6,666.67 | 4.9671 | $1,655.71 |
| 07/01/2010 | $6,666.67 | 4.8849 | $1,628.31 |
| 08/01/2010 | $6,666.67 | 4.8000 | $1,600.00 |
| 09/01/2010 | $6,666.67 | 4.7151 | $1,571.69 |
| 10/01/2010 | $6,666.67 | 4.6329 | $1,544.29 |
| 11/01/2010 | $6,666.67 | 4.5479 | $1,515.98 |
| 12/01/2010 | $6,666.67 | 4.4658 | $1,488.59 |
| 01/01/2013 | $7,000.00 | 2.3781 | $832.33 |
| 02/01/2013 | $7,000.00 | 2.2932 | $802.60 |
| 03/01/2013 | $7,000.00 | 2.2164 | $775.75 |
| 04/01/2013 | $7,000.00 | 2.1315 | $746.03 |
| 05/01/2013 | $7,000.00 | 2.0493 | $717.26 |
| 06/01/2013 | $7,000.00 | 1.9644 | $687.53 |
| 07/01/2013 | $7,000.00 | 1.8822 | $658.77 |
| 08/01/2013 | $7,000.00 | 1.7973 | $629.04 |
| 09/01/2013 | $7,000.00 | 1.7123 | $599.32 |
| 10/01/2013 | $7,000.00 | 1.6301 | $570.55 |
| 11/01/2013 | $7,000.00 | 1.5452 | $540.82 |
| 12/01/2013 | $7,000.00 | 1.4630 | $512.05 |
| 01/01/2014 | $6,833.33 | 1.3781 | $470.84 |
| 02/01/2014 | $6,833.33 | 1.2932 | $441.83 |
| 03/01/2014 | $6,833.33 | 1.2164 | $415.62 |
| 04/01/2014 | $6,833.33 | 1.1315 | $386.60 |
| 05/01/2014 | $6,833.33 | 1.0493 | $358.52 |
| 06/01/2014 | $6,833.33 | 0.9644 | $329.50 |

| | | | |
|---|---|---|---|
| 07/01/2014 | $6,833.33 | 0.8822 | $301.42 |
| 08/01/2014 | $6,833.33 | 0.7973 | $272.40 |
| 09/01/2014 | $6,833.33 | 0.7123 | $243.38 |
| 10/01/2014 | $6,833.33 | 0.6301 | $215.30 |
| 11/01/2014 | $6,833.33 | 0.5452 | $186.28 |
| 12/01/2014 | $6,833.33 | 0.4630 | $158.20 |
| **TOTAL** | | | **$116,766.93** |